United States District Court
Western District of New york

Derek Sloane,                    amended
22-B-0727                          complaint

                    Plaintiff,

                              6:24-CV-06103
                                (EaW)

        V.
Supt. E. Lowerre,
D.S.S.T. Delmar,
Captain M. mcgrain,
Captain J. Waters,
C.O. W m rowland,
C.O. A. alitta, C.O. mathews,
Lt. John Doe,
Sgt. John Doe,
Nurse Doe,          Defendants.


Second amended Complaint
        Jury Demend
    Preliminary statement
        Causes of action
I.
this is an action for damages
sustained by a citizen of the
u.s. of america against employees
of (Docs) Who violated the

(1)

civil and constitutional rights of the plaintiff by official used excessive force against plaintiff, denied him medical care for injuries he sustained in the assault, conspired with one another to cover up the assault.

## causes of action against

2. c.o. W.m. rowland, CO mathews, c.o. a. altta, Lt. John Doe, Sgt. John Doe, nurse Doe.

On or about Sept. 8, 2023, while inroute with my comp. to the messhall, I was the last individual on the line, when we reach the messhall, I was ordered off the line, get on the wall, your No.14. something told me that this is not no ordinary patfisk. c.o. rowland put his leg in between plaintiff leg thats

(2)

When I turned my head and asked him what are doing? C.O. rowland stated look at the fucking wall, mind, you, present supervisor, Lieutenant on looking, I requested to the Sgt. that I wanted to go back to the block. he Sgt. John doe, stated Just go through it. this wouldn't had happen if he Sgt. John doe, had let plaintiff go back. at this point, there was another house coming in the messhall, that house went into the without anyone being search, patfisk, etc. after that the patfisk continued, mind you, 20-25 minutes has elapsed and plaintiff is still on the wall even after I had told him, Sgt. John doe, that I plaintiff requested to go back. after these underlings completed there racist harass-ment    (3)

3. plaintiff went to open the right-side door, thats when plaintiff was bumrush from behind by several C.O.s. and all mobbed up on me on the right-side messhall door.
thats when they all beg-ain punching, stamping, kicking, me on my head, body, legs, kicking violently for several seconds, 25-60 seconds telling me that I think that I'm so tough. mind you, plaintiff is 60 years old. and suffers from medical disabilitys.

4. after this attack occurred and almost Braking my-left arm, I was handcuffed Beyound tightness that-cut into my wrist, Bleeding from my left-ear, facial swollen, cuts on head, Bruise, contusion, leftear-ringing.

(4)

# Causes of action

from being kick, and headaches, nightmares. all this for the color of my skin. Clearly there is camerafootage of this attack inwhich the jury must view.

plaintiff further assert that there was a lieutenant, sgt. present when (all this took place. location of incident, outside of (a) messhall, time. 7:45 a.m.

5.

and they failed to intervene in this racist attack, six on one. plaintiff further alleges, I was taken to ten-block, held there for several hours in holding pen without seeing, brought to medical for treatment. after sitten in holding pen for several hours. a allege nurse show up, looking from a distance, as such, you alright. (5)

6. knowing that plaintiff was bleeding from his left ear, facial swollen, left-arm injured. She stood at a distance holding a clip borad, staleing, you alright. then walked away. Why wasn't plaintiff aforded any medical attention is this part of there policies or practice of denieing me medical treatment? plaintiff asserts that the question is whether the defendants fulfilled their duty of reasonable care presents a question best left to the trier of fact).

7. causes of action plaintiff alleges after being held in holding pen for almost 5-hours he was taken back to 08-A-2-46-B lock in for days, no medical, know misbehavior know hearing.

(6)

## causes of action

8. Plaintiff asserts What kind of occurrence, act, event Was this, plaintiff gets brutality assaulted clearly capture on camera footage, sgt. John doe, Lt. John doe failed to intervene to stop it.
denied medical treatment on all levels of (D.o.c.s.) then issued a misbehavior report Without hearing, denied protected custody, know probeing of the racist incident and kept. in the same facility With perpetrators.
your honor.

9. Plaintiff asserts not even a Jury can explain this.
## causes of action
plaintiff asserts that if he Was a caucasian Would he got the same treatment. that plaintiff received?

(7)

## causes of action

10. plaintiff asserts that the treatment he received at that level was intentional and purposeful discrimination.

no person shall be denied the equal protection of the laws of this state or any subdivision thereof. no person shall, because of rach, color, creed, or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corportration, or institution, or by the state or any agaency or subdivision of the state.

## causes of action

11. for conspiracy plaintiff incorporates by reference the allegation set forth in each preceding paragraph as if fully set forth herein.

(8)

by their actions described above, defendants C.O. W.m. rowland, C.O. matthews, C.O. a. altta, Lt. John Doe, Sgt. John Doe, and John Does 1-3, jointly and severally, acting in their capacities and under color of state law, conspired together and maliciously and willfully entered into a scheme to deprive plaintiff, Sloane, Derek of his civil rights, well being, and conspired together to commit the above- alleged unlawful acts.

The acts and conduct, of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated plaintiff's rights as guaranteed by the constitution in violation of 42 U.S.C. §1983.

(9)

12. as a result of the foregoing, plaintiff was deprived of his civil rights, sustained physical and emotional injuries, was subject to great humiliation, and was otherwise harmed, damaged, and injured.

13.         causes of action for denial
        of medical treatment
plaintiff incorporates by reference the allegations set forth in each preceding paragraph set forth herein. plaintiff further assert that on or about, 9/8/23 he was taken back to 08-A-2-46-B and locked in for several days without anyone coming to see him about his injurys.

14. he then submitted sickcall, requesting er medical assist, attention to his medical provider, N.P. C. Quevvic,

n.p. Walsh, n.p. Jamie or anybody on standby. to no avail, plaintiff requests fell on deaf ears.

plaintiff also allege how each defendant was delibera—ely indifferent to his serious medical need. 1. n.p. Quervie allege to be plaintiff care provider but failed to responed to plaintiff (er) on the date mention.

n.p. Walsh, n.p. Jamie also had the duty, the moral or legal obligation to follow a certain line of conduct, or to do a certain thing. See, attached exhibits.

plaintiff asserts that he has endured a medical harsh condition for a prolong interval was a atypical. and these defendants, n.p. Walsh, n.p. Jamie, n.p. Quervie must be held

(11)

15. in this failure to treat plaintiff medical conditions.

16.    causes of action against supt. inter-alia. plintiff incorporates by reference all of the allegations set forth in each preceding paragraph set forth at lenght herein.

17. Defendant, supt. E. LoWerre, is at all relevant times the duly appointed, qualified, and supt. of five points c.f. as such, he is the highest supervisory official of that facility and is most responsible for the train- ing and supervision of correction personnel. he is also responsible for enforcing the regulations and policies of five points and for the ensuring that five points employees obey, rules and regulations.    (12) and policies.

at all relevant times, he
was acting in his capacity
as an agent, servant, and
employee of the D.o.c.s.
he is sued individually and

18. in his official capacity.
causes of action against inter. alias.

19. Defendant, D.s.s. t. Delimar,
was at all relevant times
the duly appointed, qualified,
supt. of security as such,
he is the highest in the
facility, deputy of security.
and is resposible for all
security of the facility this
includes staff, incarcerated
individuals and the safety,
the state or feeling of being
free from fear, care, danger,
etc. safety or a sense of

20. safety.
he is also responsible for
enforcing the regulations and
policies of five points cf.
and for ensuring that all
employees obey, all rules of
the, security. (13)

21. this includes captain m. mcgrain, Captain s. Waters, sgt. John Doe, Lt. John Doe. and Defendants John Does, I-3 are presently at this time, unidentified.

at all relevant times, they Was acting in there capacity as an agent, servant, and employee of the D.o.c.s. and (all is being Sued individually and in there official capacity.

all have failed on, there highest level of employment.

22. plaintiff further argues that the defendants, W.m. rowland, c.o. mathews, c.o. a. altta, and sgt. John Doe, Lt. John Doe, and John Does-1-3 Who all participated in the unlawful act, of plaintiff, and Whose unlawful conduct directly caused or contributed to the damage complained of by plaintiff herein.

(14)

23. plaintiff intends to identify, serve, and proceed against these individuals at such time as he is able.

24. as is evidenced herein, plaintiff's injuries, including the violation of his constitutional rights, the deprivation of his medical attention, suffering physical and emotional injuries, are

25. all the direct and proximate result of the defendants. Which involves, cover-ups, searche, and deliberate indifference to the need to train, supervise, monitor, probe and discipline, including suspension, dismissal and/or reassignment offending correction employees and

26. supervisors.

(15)

causes of action against Supt.

27. e. lowerre, D.ss. t. Delmar, capt. m. mcgrain, Capt. s. Waters Defendant, Supt e. lowerre, and Dss t. Delmar knew or should have known of the propensity of defendant W.m. rowland, c.o. mathews, c.o. a. altta, and John Does 1-3 to engage in the illegal and wrongful acts detailed above and/or as a matter of policy and practice, have with deliberate indifference, failed to take steps to uncover and/or correct such conduct.

28. upon information and belief, defendant, D.ss t. Delmar and had prior notice of the abusive propensities of defendants W.m. rowland, c.o. mathews, c.o. a. altta, and John does 1-3, but took no adequate steps to correct their abuse of authority, or to discourage their

(16)

unlawful use of authority,

29. acting under color of law, by and through the policy or custom and practice, the defendant, d.o.c.s. intentionally, knowingly, recklessly, or with deliberate indifference to the rights of plaintiff, failed to effectively instruct, supervise, control and discipline, on a continuing basis, their c.o. underlings, including the defendant, John doe Sgt. and Lt. John doe, and John does 1-3 herein, for their unlawful propensity, including fabrica-ting misbehavior reports and falsely swearing to them, failure to protecting plaintiff from unconstitutional conduct of other underlings, thereby permitting and allowing the individual defendant, corrections officials herein to be in a position to cause plaintiff injury and violate plaintiff's

(17)

30. federal and state constitutional rights, and/or to permit these actions to take place without plaintiff's knowledge or consent.

31. plaintiff argues that this is not an action where its my word against there word but simple put it, camera footage V. them.

32. plaintiff further assert that the Question is whether defendants fulfilled their duty of reasonable care presents a Question best left to the trier of fact.

33. plaintiff further assert the defendant, Supt. lowerre had the power, authority and duty to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, recklessly or with deliberate indifference to the

rights of the plaintiff, failed to do so.

34. as a result of the foregoing conscious policies, practices, customs and/or usages, defendants, supt. E. lowerre, d.ss. t. delmar have permitted and allowed the employment and retention of individuals as c.o.s, underlings whose individual circumstances place the plaintiff and others of incarcerated of segments thereof at substantial risk of being the victims of violent or racially motivated behavior.

35. Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the in-juries to plaintiff, Sloane, Derek.

36. causes of action against defendants for brutality, EXcessive use of force, What relief he requests C.O. W. M. rowland, C.O. mathews, C.O.a. altta, Sgt. John Doe, Lt. John Doe, and John Does-1-3

37. plaintiff alleges that the named, above underlings is the ones who causes the plaintiff's injurys, by, plaintiff went to open the door, right-side door, thats When I was bumrush from behind by several c.o.s.

38. thats when they (all) started Punching me about the head and face, kicking me as I fell to the ground, stamping me as I am on the ground. on my head, body, legs, kicking me violently for serveral seconds, 25-60 seconds. telling me that I think that I'm so tough. the incident took place outside of (a) messhall, date of incident, 9\8\2023, time. around or about 7:45 a.m. injuries, I Was hand cuffed beyound tightness, that

(20)

Why plaintiff believes he entitle to relief.

39. that cut-into my wrist, bleeding from my left-ear, facial swollen, cuts of head bruise, contusion, left ear ringing, ruptured his eardrum, broken Jaw, now suffer from headaches, nightmares.

40. as a result of the extreme, wanton, and outrageous nature of the conduct of the defendants, c.o. W.m. rowland, c.o. mathews, c.o. a. allta, Lt. John Doe, Sgt. John Doe, and John Does-1-3 in, among other things, failure to intervene and conspiring to deprive plaintiff of his civil rights,

41. a. that the court award to plaintiff compensatory damages and against defendants, jointly and severally, in an amount to be determined at trail. B.

that the court award punitive damage to plaintiff, and against all individual

(21)

defendants, in an amount
to be determined at trial,
that will deter such conduct
by defendants in the future;
c. for a trial by Jury;

D. for pre-Judgment and post-
Judgment interest and recovery
of plaintiff's costs, including
reasonable attorney's fees
pursuant to 42 U.S.C. § 1988
for all 42 U.S.C. § 1983 Claims;
and E. for such other and
further relief as this court
may deem appropriate.

Respectfully submitted,
By: Sloane, Derek
Plaintiff pro se

Dated:
rayBrook, NY
November 28, 2024

(22)

| New York State Department of Corrections and Community Supervision Division of Health Services **POLICY** | Title: **Patient Bill of Rights** | Number |
|---|---|---|
| | Section: Health Care Services | **1.04** |
| Supersedes: HSPM 1.04 dated 4/14/00 | Page: 1 of 4 | Date: 5/13/14 |
| References: HSPM 7.18, Directive 4040 | | |
| Approved by: *Curt Naunigum MD* | | |

*Exhibit A*

## I.     POLICY:

The New York State Department of Corrections and Community Supervision (DOCCS) acknowledges a standard Patient Bill of Rights for all inmates in regard to the provision of medically necessary health care.

## II.     PROCEDURE:

As a patient under the care and custody of DOCCS, you have the right to:

1.  Considerate and respectful care.

2.  The name of the physician responsible for coordinating your care.

3.  The name and function of any person providing health care services to you.

4.  Complete, current information concerning your diagnosis, treatment and prognosis in a format and in a language that you can understand. When it is not medically advisable to give this information to you, it shall be made available to your legal representative or health care proxy on your behalf.

5.  Information in a format and in a language that is necessary to give informed consent prior to the start of any care involving either non-emergency conditions, surgery or other invasive procedure or be made available to you, your legal representative or health care proxy on your behalf.

6.  Refuse treatment to the extent permitted by law without disciplinary consequence and be informed of the medical consequences of this action in accordance with Health Services Policy 7.18 "Inmate Refusal of Medical/Dental Care".

7.  Privacy and confidentiality to the extent consistent with providing adequate medical care and the safety and good order of the facility. This does not preclude discussion of your case with appropriate DOCCS personnel.

8.  Privacy and confidentiality of health records pertaining to your diagnosis and treatment, except as provided by law and consistent with the safety and good order of the facility.




Once recommendations are reviewed, they are forwarded to the Health Services Policy Manual Review Committee Chairperson.

The Health Services Policy Manual Review Committee includes:

- Chairperson - Supervising Medical Record Administrator
- Assistant Commissioner for Clinical Affairs or designee
- Director of Health Services or designee
- Director of Dental Services
- Infectious and Communicable Disease Coordinator
- Director of Nursing and Ancillary Services
- Assistant Director of Health Services
- Central Pharmacy Director or designee
- Supervisor of Utilization Management
- Supervisor of Program Planning and Administration
- Regional Health Services Administrative Staff

This Committee meets monthly and as needed.

A. Implementation of Policy Additions or Revisions

New draft policies or revisions are given to the Health Services Policy Review Committee prior to their meeting. The members forward their comments to the Committee Chair who integrates and distributes new drafts.

A final draft is developed and distributed to members post-meeting. The final recommendation is edited and sent to the Deputy Commissioner/Chief Medical Officer for review and signature.

PPGM\overview

*Exhibit C*

# NEW YORK STATE
## DEPARTMENT OF CORRECTIONAL SERVICES
### HEALTH SERVICES POLICY MANUAL

### I.  Purpose of Manual

The Health Services Policy Manual serves as a guide for health care personnel.  Health Services Policy Manual is designed to assist with effective and efficient health care delivery by standardizing Department policies and procedures.

### II.  Organization of Manual

The Health Services Policy Manual is divided into the following sections:

1.000 Health Care Services
2.000 Dental Services
3.000 Pharmacy Services
4.000 Health Records Services
5.000 Employee Health Services
6.000 Personnel Services
7.000 Administrative Services
8.000 Reporting Systems

At the beginning of the manual and at each section, a Table of Contents is provided.

### III.  Use of Manual

As part of employee orientation, all health providers are required to familiarize themselves with the manual.  Current employees are required to review the manual annually.  Upon completion of the review it is recommended that personnel sign a statement attesting to the review.  The Nurse Administrator maintains this annual statement in employee files.

### IV.  Updating and Revision

Changes in policies and procedures arise from field and central office recommendations, as well as from annual Health Services Policy Manual Review Committee recommendations.  When the recommended change is related to clinical issues, these proposals are directed to the DOCS Assistant Commissioner for Clinical Affairs.  Recommendations related to administrative and managerial issues are directed to the Director of Health Operations.



| Department of Corrections and Community Supervision Health Services Policy | | | |
|---|---|---|---|
| Title: Patient Bill of Rights | Number: 1.04 | Date: 5/13/14 | Page: 2 of 4 |



9. You and your legal representative can access, obtain copies, and/or request an amendment to your health record in accordance with the Health Insurance Portability and Accountability Act (HIPAA) regulations at 45 CFR Parts 160 and 164, New York State Public Health Laws 18 and 27F except as provided by law and consistent with the safety and good order of the facility. Access is free of charge, however you or your legal representative will be charged for copies of your health record.

10. Be informed of your continuing health care requirements at the time of your release from DOCCS.

11. The identity of other health care and educational institutions that the facility has authorized to participate in your treatment.

12. Refuse to participate in health research.

13. To file a medical/dental grievance in accordance with Directive 4040 "Inmate Grievance Program" regarding your care without fear of reprisal.

14. Treatment will be without discrimination as to race, color, religion, sex, national origin, disability, age, veteran status, gender identity, source of payment, or any other status or condition protected by law.